RECEIPT #_____
AMOUNT $ 150
SUMMONS ISSUED Y
LOCAL RULE 4.1_____
WAIVER FORM_____
MCF ISSUED_____
BY DPTY. CLK. ____
DATE 2-13-04

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOSYSTEMS, INC., and ) | |
| DANIEL MOSER, ) | |
| Plaintiffs ) | |
| ) | CIVIL ACTION NO. |
| V. ) | |
| ) | 04-10312 PBS |
| DARWIN PARTNERS, INC., and ) | |
| Defendant ) | |

## PLAINTIFF'S COMPLAINT AND JURY CLAIM

### I. PARTIES

MAGISTRATE JUDGE Collings

1. The Plaintiff, Mosystems, Inc. (hereinafter "Mosystems"), is a foreign corporation, organized under the laws of the Province of Ontario, Canada.

2. The Plaintiff, Daniel Moser (hereinafter "Moser") is an individual residing in Stoney Creek, Ontario, Canada. At all times material hereto, Moser was the President and sole stockholder in Mosystems.

3. The Defendant, Darwin Partners, Inc. (hereinafter "Darwin"), is a corporation duly organized under the laws of the Commonwealth of Massachusetts, and maintains its principal place of business in Wakefield, Middlesex County, Massachusetts.

### II. JURISDICTION

4. Jurisdiction on this matter is based upon 28 U.S.C. 1332, diversity of citizenship, as this action involves a dispute between citizens of Canada, a foreign state, and a citizen of the Commonwealth of Massachusetts, and the amount in controversy exceeds $75,000.00.

## III. GENERAL ALLEGATIONS

5. At all times material hereto, Darwin was a staffing company, engaged in the recruitment and placement of professionals in the computer field as temporaries with other companies.

6. In carrying on its business, Darwin would sell to its customers the services of temporary workers, who Darwin would hire and then place at companies on a contract basis.

7. On January 9, 2002, Darwin entered a contract with Mosystems, captioned an "Independent Contractor Agreement" (hereinafter "ICA"), under which Mosystems agreed to provide specialized computer services for clients of Darwin. A true copy of the ICA is attached hereto as Exhibit "1".

8. Also on January 9, 2002, Darwin and Mosystems entered a contract, captioned a "Purchase Order", wherein Mosystems agreed to provide the services of Moser as an Interface Developer for BP America, a client of Darwin, based in Ohio. A true copy of the Purchase Order is attached hereto as Exhibit "2".

9. By its express terms, the Purchase Order is incorporated into and expressly made a part of the ICA entered into by Mosystems and Darwin.

10. Pursuant to this Purchase Order, Moser was to perform said services from January 28, 2002 through August 2, 2002.

11. In addition, Darwin required Moser to sign a contract document, captioned as the "Employee Consent", wherein Moser was required *inter alia* to warrant that he was not restricted by employment from providing the services called for in the contract

between Darwin and Mosystems. A true copy of the "Employee Consent" executed by Moser is attached hereto as Exhibit "3".

12. At the time of the execution of the ICA, the Purchase Order and the Employee Consent, Moser was gainfully employed in Canada by Options Software.

13. In reliance upon the ICA, the Purchase Order and the provisions of the Employee Consent, Moser resigned from his position with Options Software, and applied for TN status with the United States Immigration and Naturalization Service (hereinafter "INS") as a Senior Microsoft Developer.

14. In support of Moser's Application, Darwin wrote to INS and represented that Moser would be performing temporary services for Darwin at a client site.

15. On January 13, 2002, Moser received a visa from INS.

16. On January 17, 2002, Darwin wrote to Mosystems and Moser, and advised that Moser's start date in Ohio was being pushed back from January 28, 2002 to February 4, 2002.

17. Approximately one week later, Darwin advised Mosystems and Moser that the start date was again being pushed back to February 18, 2002, and that the completion date for the contract was being extended to August 31, 2002.

18. On February 8, 2002, Darwin advised Mosystems and Moser that the start date was again being pushed back.

19. On February 13, 2002, Darwin wrote to Mosystems and Moser, and advised that the project would not be starting as scheduled, and represented that it might not be starting at all.

20. After being repeatedly informed by Darwin that the project would not be starting as scheduled, Mosystems and Moser advised Darwin of the financial hardships being created, including the fact that Moser had resigned his job in reliance upon the execution of the ICA, the Purchase Order, and the Employee Consent. In this regard, Mosystems and Moser made demand upon Darwin to be compensated for the damages caused by the repeated delays in the commencement of work.

21. On February 19, 2002, Darwin wrote to Mosystems and Moser, purported to cancel the ICA and the Purchase Order, and refused to compensate Mosystems and Moser for the damages they had incurred.

22. At all times material hereto, Mosystems and Moser stood ready to perform their obligations pursuant to the ICA, the Purchase Order, and the Employee Consent signed by Moser.

## COUNT I
(Breach of Contract)
[Mosystems v. Darwin]

23. The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs one through twenty two of this Complaint, as if expressly set forth herein.

24. The ICA and the Purchase Order, each dated January 9, 2002, constitute a valid and enforceable contract, containing mutually dependent obligations.

25. As more particularly set forth above, Darwin has materially breached the terms of the ICA and the Purchase Order, and has thereby caused actual and substantial damages to Mosystems.

## **COUNT II**
(Breach of Contract)
[Moser v. Darwin]

26. The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs one through twenty five of this Complaint, as if expressly set forth herein.

27. Under the ICA, the Purchase Order, and the Employee Consent, Darwin, Mosystems and Moser specifically agreed that Moser would be the individual providing services to Darwin's client, and Moser was required to warrant to Darwin that there were no impediments, including employment with other companies, that would prevent him from rendering the services called for in the contract between Darwin and Mosystems.

28. The Employee Consent permitted Darwin to sue Moser for the breach of any of its provisions, and required Moser to indemnify and hold Darwin harmless in the event that Moser breached any of the terms of the Employee Consent.

29. Moser is an intended beneficiary of the contract between Darwin and Mosystems, and has standing to sue Darwin for Darwin's breach of its contract with Mosystems.

30. As more particularly set forth above, Darwin has materially breached the terms of the ICA, the Purchase Order, and the Employee Consent, and has thereby caused actual and substantial damages to Moser, including, but not limited to, Moser's loss of income resulting from his resignation from his position with Options Software, and other expenses and damages incurred by Moser in reliance upon the ICA, the Purchase Order, and the Employee Consent.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiffs, Mosystems, Inc., and Daniel Moser, demand judgment as follows:

(1) That, with respect to the claims asserted in Count I of the Complaint, this Court enter judgment in favor of Mosystems, Inc., for the full amount of the damages caused to Mosystems, plus interest and costs.

(2) That, with respect to the claims asserted in Count II of the Complaint, this Court enter judgment in favor of Moser, for the full amount of the damages caused to Moser, plus interest and costs.

(3) That this Court grant such other and further relief as it deems necessary and proper.

## JURY DEMAND

PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL ISSUES SO TRIABLE.

Respectfully Submitted:

MOSYSTEMS, INC.
DANIEL MOSER

By their attorney:

John L. Landry, III
Glynn, Landry, Harrington and Rice
10 Forbes Road
Braintree, MA 02184
(781) 356-1399
BBO No. 544388