UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 JUN 14  P 2: 55

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | | |
|---|---|---|
| MOSYSTEMS, INC., and | ) | |
| DANIEL MOSER, | ) | |
|     Plaintiffs | ) | |
| | ) | CIVIL ACTION NO. |
| V. | ) | 04-CV-10312-PBS |
| | ) | |
| DARWIN PARTNERS, INC., | ) | |
|     Defendant | ) | |

**MEMORANDUM IN SUPPORT OF THE PLAINTIFFS, MOSYSTEMS, INC. AND DANIEL MOSER'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

## I. <u>INTRODUCTION</u>

This Memorandum is submitted by the Plaintiffs, Mosystems, Inc. (hereinafter "Mosystems") and Daniel Moser (hereinafter "Moser"), in support of their Opposition to the Motion to Dismiss filed by the Defendant, Darwin Partners, Inc. (hereinafter "Darwin").

As set forth more fully below, both Mosystems and Moser have stated legally cognizable claims against Darwin for breach of contract. The contract entered into between Darwin and Mosystems on January 9, 2002, consisted of two integrated documents, an "Independent Contractor Agreement" (hereinafter "ICA") and a "Purchase Order", wherein Mosystems agreed to provide specialized computer services to BP America, a Darwin client, for the period from January 28, 2002 through August 2, 2002. Contrary to the assertions made by Darwin in its Motion, the contract entered into between Darwin and Mosystems was not a contract that was terminable at will, and any purported termination by Darwin, to be effective, was required to be in writing, as provided for by Section 16(a) of the ICA, and signed by both Darwin and Mosystems. Darwin never terminated its contract with Mosystems in accordance with the express terms of said contract, and caused substantial

damages to Mosystems by repeatedly pushing back the start date of the contract, while at the same time refusing to compensate Mosystems for the damages caused by these delays.

Moser has also stated a claim for breach of contract. Based on the terms of his "Employee Consent", dated January 14, 2002, which incorporates the ICA and the "Purchase Order, and which Darwin required Moser to sign, Moser has standing to pursue his claims for his personal reliance damages caused by Darwin's breach of contract. Alternatively, Moser was an intended beneficiary of the contract entered into between Darwin and Mosystems, and, on that basis, has standing to advance his claims against Darwin. In the "Employee Consent", Moser was required to warrant that he was not in any way restricted by employment from carrying out his duties under the "Employee Consent". In order to perform these duties, Moser resigned his position with another employer in reliance upon the "Employee Consent" and the contract between Darwin and Mosystems, and incurred substantial damages and loss of income caused by the repeated delays, and subsequent purported cancellation of the contract.

To the extent that Darwin has asked this Court to consider material outside the pleadings in ruling on this Motion, Mosystems and Moser file the attached Affidavit of Daniel Moser, in which Moser avers that Mosystems never received formal written notification from Darwin of the cancellation of the contract, and that Darwin made representations to the contrary. Accordingly, Mosystems and Moser contend that there are material facts in dispute which would preclude the entry of summary judgment in this matter, should the Court decide to treat Darwin's Motion as a Motion for Summary Judgment. Further, Mosystems and Moser, through the attached Affidavit of the undersigned counsel, aver, pursuant to Fed. R. Civ. P. 56(f), that no discovery has yet taken place in this action, that the Rule 16.1

Conference has yet to be scheduled, and that discovery will likely yield further information to support Mosystems' and Moser's Opposition to this Motion. In particular, the depositions of Jonathan Nichols and Mark Keefe, the two Darwin employees with whom Moser communicated in connection with this matter, need to be conducted.

## II. BACKGROUND AND OPERATIVE FACTS

### A. *The Allegations Of The Complaint.*

Mosystems is a Canadian company which specializes in the area of computer programming, and computer systems analysis and technical support. (Complaint ["Cplt."], ¶1). Moser is an interface developer and is the President and sole stockholder in Mosystems. (Cplt., ¶2).

Darwin is a Massachusetts based professional staffing company, and is involved in the recruitment and placement of professionals in the computer field. (Cplt., ¶¶ 3, 5-6).

On January 9, 2002, Mosystems agreed to provide specialized computer services on behalf of Darwin to BP America, one of Darwin's clients. (Cplt., ¶7). On that date, Darwin and Mosystems signed two fully integrated documents, an ICA (Cplt., Ex. 1) and a "Purchase Order" (Cplt., Ex. 2) [1], each dated January 9, 2002, which, combined, represented the contract entered between Darwin and Mosystems. [2] (Cplt., ¶¶ 7-8). Under the contract, Mosystems agreed to provide the services of Moser to work as an interface developer for BP America for the specified term of January 28, 2002 through August 2, 2002, and for an agreed upon payment to Darwin of $63,440.00 in United States funds for the provision of such services. (Cplt., ¶¶ 7-10 and Cplt, Ex. 2).

---

[1]   The first page of the Purchase Order sets forth the date of January 9, 2002, although, on the second page, the date of January 14, 2002 has been asserted. For purposes of Darwin's Motion and this Opposition, the date is not material.

[2]   The relevant contractual provisions of the contract are set forth in the "Argument" section, below.

Although Mosystems was to begin performing services on behalf of Darwin on January 28, 2002, the start date for the contract was repeatedly pushed back, first to February 4, 2002, then to February 18, 2002, and then generally. (Cplt., ¶¶ 16-19). When Mosystems requested, on February 19, 2002, to be compensated by Darwin for the damages being caused by the repeated delays in the commencement of the contract, Darwin refused to provide any compensation to Mosystems. (Cplt., ¶¶ 21).

In addition, as a condition of the contract between Darwin and Mosystems, Moser was required to execute an "Employee Consent" form, wherein Moser expressly warranted that he was not restricted by employment from providing the services called for in the contract between Darwin and Mosystems, and wherein Moser was required, *inter alia*, to indemnify and hold both Darwin and BP America harmless in the event that Moser violated any of the provisions of the "Employee Consent". (Cplt., ¶ 11, Cplt., Ex. 3). As set forth more fully below, in preparation for the performance of his obligation under the contract and the "Employee Consent", Moser resigned from his employment with Options Software, and applied for and received TN status with the United States Immigration and Naturalization Service on January 13, 2002. (Cplt., ¶¶ 12-15). Moser makes claim against Darwin for breach of contract or, alternatively, as an intended beneficiary of the contract between Darwin and Mosystems.

**B.    *Additional Facts Concerning Darwin's Purported Termination Of The Contract.***

On February 19, 2002, Moser spoke with Jonathan Nichols and Mark Keefe, the two Darwin employees with whom he dealt on the contract, and was advised that BP America was "canceling" its contract with Darwin, but that Darwin would be seeking to have Moser placed in another position at BP America. (Affidavit of Daniel Moser, ¶5). Later that day, Moser

sent an e-mail to Darwin, outlining the hardships being caused by the purported cancellation, and requesting compensation from Darwin for the delays and purported cancellation of Mosystems' contract. (Affidavit of Daniel Moser, ¶6). Darwin refused to compensate Mosystems and claimed that the contract between Darwin and Mosystems was terminable at will, but also represented in writing to Moser that Darwin was trying to get Moser placed at BP America, or at other Darwin clients. (Affidavit of Daniel Moser, ¶7). Based on the written and oral representations of Jonathan Nichols, Moser did not believe that Mosystem's contract with Darwin was terminated. (Affidavit of Daniel Moser, ¶8).

Darwin never notified Mosystems in writing that the contract between Mosystems and Darwin was cancelled. (Affidavit of Daniel Moser, ¶¶ 4, 9).

### III. <u>ARGUMENT</u>

#### A.    *The Rule 12(b)(6) Standard.*

In considering a motion to dismiss for failure to state a claim, a court must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Blackstone Realty LLC v. FDIC,* 244 F. 3d 193 (1st Cir. 2001); *Hughes v. McMenamon,* 204 F. Supp. 2d 178 (D. Mass. 2002). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41 (1957). Finally, Mosystems and Moser agree that, in an action for breach of contract, a plaintiff must prove the existence of a valid binding agreement, the defendant's breach of that agreement, and damages resulting from the defendant's breach. *Coll v. PB Diagnostic Systems, Inc.,* 50 F. 3d 1115, 1122 (1st Cir. 1995).

As this standard applies, Mosystems and Moser have each stated a claim for breach of contract against Darwin.

**B.**    ***Mosystems Has Stated Facts More Than Sufficient To Show, Under A 12(b)(6) Standard, All Of The Essential Facts Of Its Breach Of Contract Claim.***

      **(i)**    **The Contract Between Darwin and Mosystems Was Not Terminable At Will.**

As a threshold matter, Darwin's assertion that its contract with Mosystems was "terminable at will" [3] is clearly erroneous as a matter of Massachusetts law.

Under Section 1 of the Purchase Order, Mosystems was to perform services on behalf of Darwin at BP America for the period from January 28, 2002 to August 2, 2002. While Section 2 of the Purchase Order provides for the extension of the time for performance in the event that the work contemplated by the contract had not been completed, Darwin and Mosystems expressly agreed that "the purpose of this paragraph is not to extend the end date indefinitely and create a continuous relationship, but is instead to cover situations where the original estimates for project completion required adjustment."

Where the parties to a contract expressly agreed to a fixed durational time for the performance of the contract, the contract is not terminable at will, but may only be terminated for cause. *Lemire v. Silva,* 104 F. Supp. 2d 80 (D.Mass. 2000); *Serpa Corporation v. McWane, Inc.,* 199 F. 3d 6 (1st Cir. 1999); *Labreque v. Niconchuk,* 442 F. 2d 1094 (1st Cir. 1971). Under Massachusetts law, a contract will be construed as terminable at will only where the contract fails to specify a durational term. *Mass Cash Register, Inc. v. Comtrex System Corp.,* 901 F. Supp. 404 (D. Mass. 1995). Since the contract between Darwin and Mosystems expressly provides for a fixed durational time for performance between January 28, 2002 and August 2, 2002, their contract is not terminable at will.

---

[3]    See Darwin's Memorandum of Law, pages 6-8.

## (ii)    Darwin's Purported Cancellation Of The Contract Was Ineffective.

In its Memorandum, Darwin seemingly relies on Section 2 of the ICA for the

proposition that its contract with Mosystems automatically terminates "upon notice from BP

America." [4]  Darwin's interpretation of this provision is erroneous.  Section 2 merely sets

forth the term within which the services called for by the contract will be performed.  This

section provides in pertinent part as follows:

2.    TERM OF AGREEMENT

    a.  Nothing in this Agreement obligates Contractor to accept any offer to provide
services.  However, all terms and conditions of this Agreement shall remain in
force during any and all periods for which Contractor's services are provided to the
Client and for any other periods before and/or thereafter as stated herein.

    b.  Prior to the commencement of any services, Darwin and Contractor will execute a
Purchase Order .... which shall be considered part of this Agreement and binding
upon both parties.  Contractor's services under this Agreement will terminate at the
end of the minimum time requirement covered by the Purchase Order and any
renewals or extensions thereof ("end date"), or upon notice if for any reason the
client no longer desires the service of Contractor.  Darwin will immediately notify
Contractor when notified by Client of any early termination, and extend to
Contractor the notice period granted by Client to Darwin.

    c.  Contractor may not voluntarily terminate its services under the Agreement before
the end date unless, as stated in writing by the Client, the project has been
completed or the services are no longer required.....

Section 16(a) of the ICA governs any modification of the proposed term of the

contract, including the present situation where Darwin's client, BP America, apparently

canceled its own contract with Darwin, and Darwin then desired to terminate its contract with

Mosystems.  Section 16(a) provides, in its entirety, as follows:

This Agreement and any attached Purchase Order(s) and Exhibit(s), including those
relating to separate requirements imposed by the Client, represent the entire agreement
and understanding of the parties and any modifications thereof shall not be effective
unless contained in writing signed by both parties.  **No other document, including
any agreement between Darwin and the Client, shall be deemed to modify any**

---

[4]    See Darwin's Memorandum, pages 5-6.

> **terms of this Agreement unless expressly stated in writing to do so and signed by
> both Darwin and Contractor.**

(emphasis supplied). As noted above, Mosystems agreed to perform services on behalf of

Darwin for BP America for the period from January 28, 2002 to August 2, 2002. In order for

Darwin to modify the term of the Purchase Order, by canceling the contract, Darwin was

required by Section 16(a) to notify Mosystems in writing of this modification, and to obtain

Mosystems agreement to this cancellation. Darwin failed to do so, and, under Section 16(a),

its attempt to cancel the contract was ineffective. *G. M. Abodeely Ins. Agency v. Commerce

Ins. Co.,* 41 Mass. App. Ct. 274 (1996).

     **(iii)    Mosystems Has Demonstrated Damages.**

     Darwin's contention that Mosystems had no guarantee that it would perform services

under the contract, and therefore sustained no actual damages, is likewise misplaced. As

noted above, Darwin breached its contract with Mosystems, by repeatedly postponing, and

then improperly attempting to terminate, the contract. Under Section 5 of the ICA,

Mosystems was required to warrant that it was not restricted by any employment or other

contractor from providing the services called for in the Purchase Order. Mosystems alleges

that, at all times material to the contract, it stood ready to perform its obligations. Mosystems'

damages include the contract damages caused by Darwin's breach of contract, and

consequential damages caused by the repeated postponement of the commencement date of

the contract.

**C.**    ***Moser Has Stated Facts More Than Sufficient To Show, Under A 12(b)(6)***
***Standard, All Of The Essential Facts Of His Breach Of Contract Claims.***

**(i)    Moser Has Standing To Sue Darwin For Breach Of Contract.**

Moser contends that the ICA, the "Purchase Order", and the "Employee Consent"

provide him with standing to sue Darwin directly for its breach of contract.

In this regard, Moser is clearly a party to the contract between Darwin and Mosystems.

The "Employee Consent" is signed by Moser, and is made a part of the ICA, which is signed

by both Darwin and Mosystems. In Section 1 of the "Employee Consent", Moser agrees that,

for the term of the ICA, and any renewals thereof, he will agree to a restriction upon his

employment, and that he will not provide services to any client of Darwin. In Section 2,

Moser also is required to warrant that he was not restricted by means of employment from

performing the services called for on the BP America project. In Section 6, Moser is required

to indemnify and hold both Darwin and BP America harmless from all losses or liability

related to any violations of the agreement, and, in Section 7, Moser is required to consent to

the exercise of personal jurisdiction in Massachusetts. Moser signed the "Employee

Consent", and immediately upon its execution, resigned from his position of employment in

order to be in a position to perform his obligations under the Agreement, and had no other

source of income while the start date of the BP America project was repeatedly postponed.

Moser fulfilled his obligations under this contract, and contends that he is entitled to recover

the damages he sustained in reasonable reliance upon the contract.

Alternatively, if Moser is not considered a party to the contract between Darwin and

Mosystems, he is nonetheless an intended beneficiary of said contract. Under Massachusetts

law, an intended beneficiary is a third party whom the contracting parties intended to have the

right to sue in the event of breach. *Ayala v. Boston Housing Authority,* 404 Mass. 689, 700-

701 (1989). The resolution of whether or not a party may maintain a third party beneficiary contract claim requires interpretation of the contract itself. *Owens v. Haas,* 601 F. 2d 1242, 1248 (2nd Cir.) *denied sub nom. County of Nassau v. Owens,* 444 U.S. 980 (1979); *see Bennett v. Massachusetts Bay Transportation Authority,* 8 Mass.L.Rptr. 154 (Massachusetts Superior Court, Garsh, J., February 2, 1998).

The Restatement (Second) of Contracts, §302, provides:

Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. An incidental beneficiary is a beneficiary who is not an intended beneficiary.

As this standard applies, Moser contends that he is an intended beneficiary of the contract between Darwin and Mosystems. Darwin expressly required that Moser be the individual to perform the services called for in the "Purchase Order". Moser was required by Darwin to sign the "Employee Consent", pursuant to which he was required, which imposed affirmative obligations on Moser to perform. Significantly, if Moser did not perform as required by the Purchase Order, he was personally liable for any damages caused to Darwin and BP America. Since the "Employee Consent" imposed affirmative obligations upon Moser, and afforded Darwin the right to sue Moser personally for any alleged breach of contract that he committed, Moser contends that he also has the right, under said contract, to sue Darwin directly for the reliance damages that he personally sustained as a result of Darwin's breach of contract.

### (ii)    Moser Has Demonstrated A Breach Of Contract By Darwin.

For the reasons set forth in the previous subsection, as well as the reasons set forth in Section B, *supra.,* Moser, like Mosystems, has established a breach of contract on the part of Darwin.

### (iii)    Moser Is Entitled To Recover His Reliance Damages.

Moser is entitled to recover the damages he sustained in reliance upon the contract between Darwin and Mosystems, to which he was either a party or an intended beneficiary. Moser was clearly entitled to rely on the ICA, the "Purchase Order", and the "Employee Consent" in resigning his position with Options Software. Indeed, Moser had to do so, because of the express warranty set forth in the "Employee Consent" requiring that Moser not be restricted by employment or other agreement from providing services to BP America. Darwin asked for, and received, this representation from Moser. If, for example, Moser had not resigned and was not ready to perform the services called for by the contract as of the start date of January 28, 2002, he would have been personally liable to Darwin and to BP America for all damages that resulted. Accordingly, it was not "foolhardy", as Darwin now contends, for Moser to have resigned from his job at Options Software. It would have been foolhardy not to. Accordingly, Darwin is obligated to pay Moser the reliance damages personally sustained by Moser in this regard.

## IV. **CONCLUSION**

For all of the foregoing reasons, Darwin's Motion to Dismiss for failure to state a

claim should be denied.

Respectfully Submitted:

MOSYSTEMS, INC.
DANIEL MOSER

By their attorney:

John T. Landry, III
Glynn, Landry, Harrington and Rice
10 Forbes Road
Braintree, MA  02184
(781) 356-1399
BBO No. 544388

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the
above document was served upon the
attorney of record for each party by mail on

6-14-2004