```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
_____
                               )
MOSYSTEMS, INC., and           )
DANIEL MOSER,                  )
     Plaintiffs,               )
                               )          CIVIL ACTION NO.
     v.                        )          04-CV10312-PBS
                               )
DARWIN PARTNERS, INC.,         )
     Defendant.                )
_____)
```

**MEMORANDUM AND ORDER**

January 14, 2005

Saris, U.S.D.J.

### I.  INTRODUCTION

Plaintiffs Mosystems, Inc. ("Mosystems") and Daniel Moser ("Moser") have brought a three-count complaint for breach of contract and promissory estoppel against defendant Darwin Partners, Inc. ("Darwin").  After hearing, the Court **DENIES** Darwin's motion to dismiss.

### II.  STATEMENT OF FACTS

The first amended complaint ("the complaint") alleges the following facts.  Mosystems is a Canadian company that specializes in computer programming, computer systems analysis, and technical support. Moser is an interface developer and is the president and sole stockholder of Mosystems.  Defendant Darwin is a Massachusetts-based professional staffing company, and is involved in the recruitment and placement of professionals in the computer field.

1

On January 9, 2002, Mosystems agreed to provide specialized computer services on behalf of Darwin to BP America, one of Darwin's clients. On that date, Darwin and Mosystems signed an Independent Contractor Agreement ("ICA") and a Purchase Order. Under the agreements, Mosystems agreed to provide services for BP America for the specified term of January 28, 2002 through August 2, 2002 for approximately $63,440.00.  Section 2(b) of the ICA reads in its entirety:

> Prior to the commencement of any services, Darwin and Contractor will execute a Purchase Order on the form attached as Exhibit A to this Agreement which shall be considered part of this Agreement and binding upon both parties.  Contractors' services under this Agreement will terminate at the end of the minimum time requirement covered by the Purchase Order and any renewals or extensions thereof ("end date"), **or upon notice if for any reason the client no longer desires the services of Contractor**.  Darwin will immediately notify Contractor when notified by Client of any early termination, and extend to Contractor the notice period granted by Client to Darwin.

(Emphasis added).  Section 6(b) provides that the contractor is entitled to compensation only upon Darwin's receipt of funds from the client on the invoice.

Although Mosystems was to begin performing services on January 28, 2002, the start date of the contract was repeatedly postponed by BP America, first to February 4, 2002, then to February 18, 2002, and then indefinitely.  According to the complaint, on February 13, 2002, Darwin wrote to plaintiffs and

2

advised that the project would not be starting as scheduled and "might" not be starting at all (¶19). On February 19, 2002, Darwin wrote to plaintiffs to cancel the contract (¶21). When Mosystems requested, on February 19, 2002, to be compensated by Darwin for the damages it incurred due to the repeated delays in commencement of the contract, Darwin refused to provide any compensation.

As a condition of the contract between Darwin and Mosystems, Moser was required to execute an "Employee Consent" form on January 14, 2002, which required Moser to warrant that he was not restricted by employment from providing services to BP America. In preparation for the performance of the ICA, Moser resigned from his previous employment at Options Software. Moser was also required under the contract to indemnify both Darwin and BP America in the event that he violated any of the provisions of the Employee Consent form.[1]

### III. DISCUSSION

**A. Motion to Dismiss Standard**

For purposes of this motion, the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [to the] plaintiff every reasonable inference in [his] favor." Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992) (citing Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 51

---

[1] The Court will not consider any facts not alleged within the Amended Complaint.

(1st Cir. 1990)). A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." Roeder v. Alpha Indus., Inc., 814 F.2d 22, 25 (1st Cir. 1987)(quoting Conley v. Gibson, 355 U.S. 41, 45 (1957)).

**B. Breach of Contract**

To establish a claim for breach of contract, a plaintiff must prove the existence of a valid binding agreement, the defendant's breach of that agreement, and damages resulting from that breach. Coll v. PB Diagnostic Sys., Inc., 50 F.3d 1115, 1122 (1st Cir. 1995). The existence of a valid binding contract is uncontested. Mosystems argues that the contract was not terminable at will, since the contract was for a fixed durational time period between January 28, 2002 and August 2, 2002.

Generally speaking, where the parties to a contract expressly agree to a fixed durational period of time, the contract is not terminable at will, but may only be terminated for cause. See Lemire v. Silva, 104 F. Supp. 2d 80, 95 (D. Mass. 2000)(factual issue existed as to whether high school coach's contract was for a definite period of time and therefore she would not be an at-will employee). Here, however, the ICA includes a clause that allows Darwin to terminate it "upon notice if for any reason the client no longer desires the services of the Contractor." Plaintiff's argument that the contract is not

terminable at will contradicts an unambiguous provision of the contract. Liberty Mut. Ins. Co. v. Gibbs, 773 F.2d 15, 17 (1st Cir. 1985)("where the wording of the contract is unambiguous, the contract must be enforced according to its terms"). Accordingly, if BP America no longer desired the services of plaintiff, the contract could be terminated without cause so long as notice was given.

Darwin claims it terminated the contract as soon as it learned the job was cancelled. Mosystems argues that Darwin's cancellation of the contract was ineffective, since Mosystems was not notified in writing of the cancellation, as required by Section 16(a) of the ICA.[2] Where written notification of termination is required, failure to do so may render the termination ineffective until written notice occurs. Fenoglio v. Augat, Inc., 50 F. Supp. 2d 46, 52 (D. Mass. 1999). Here, there is no requirement in Section 16(a) that the termination notice be in writing, and even if there were, initial notice was given in writing on February 19. However, the delay in providing notification between January 28 and February 19 arguably caused

---

[2] Section 16(a) provides: "This Agreement and any attached Purchase Order(s) and Exhibit(s), including those relating to separate requirements imposed by the Client, represents the entire agreement and understanding of the parties and any modifications thereof shall not be effective unless contained in writing signed by both parties. No other document, including any agreement between Darwin and the client, shall be deemed to modify any terms of this Agreement unless expressly stated in writing to do so and signed by both Darwin and contractor."

5

damages.

**C. Moser**

Moser argues that he has standing to sue for breach of contract because he signed the Employee Consent form. In the Employee Consent, Moser agreed to multiple restrictions on his employment, including a prohibition on taking other employment that might interfere with his work for BP America. Immediately upon execution of the Employee Consent, Moser resigned from his previous employment in order to perform his obligations under the ICA.

Moser contends that he is an intended beneficiary of the contract between Darwin and Mosystems. The Restatement (Second) of Contracts §302, provides:

> Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to perform in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. An incidental beneficiary is a beneficiary who is not an intended beneficiary.

An individual claiming to be an intended beneficiary of an agreement must establish that the parties to the agreement expressly intended to confer on that individual the status of third party beneficiary. See Spinner v. Nutt, 417 Mass. 549, 555, 631 N.E.2d 542, 546 (1994). The crux in third-party

beneficiary analysis is the intent of the parties.  In re Pharm. Indus. Average Wholesale Price Litig., 339 F. Supp. 2d 165, 178 (D. Mass. 2004)(quoting McCarthy v. Azure, 22 F.3d 351, 356 (1st Cir. 1994)).  The law requires "special clarity" to support a finding that the contracting parties intended to confer a benefit on a third party.  Id.  The intended party need not be specifically or individually identified in the contract, but must fall within a class clearly intended by the parties to benefit from the contract.  McCarthy, 22 F.3d at 362.

Darwin contends that the ICA did not envision Moser as an intended beneficiary, and that at best Moser is an incidental beneficiary of the contract.  "Under Massachusetts law, only intended beneficiaries, not incidental beneficiaries, can enforce a contract."  Harvard Law Sch. Coalition for Civil Rights v. President & Fellows of Harvard Coll., 413 Mass. 66, 71, 595 N.E.2d 316, 319 (1992).  Since Moser, the sole shareholder, president, and signatory of the agreements, was required to sign the Employee Consent, restricting his ability to take other employment (and causing him to resign from previous employment), it is a reasonable inference that both parties intended to confer on Moser the status of third party beneficiary.

Moser also contends that he is entitled to recover the damages he sustained in resigning from his previous employment in reliance upon the contract between Darwin and Mosystems.  "A promise which the promisor should reasonably expect to induce

7

action ... on the part of the promisee or a third person and which does induce such action ... is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts §90(1)(1981).

Darwin claims that it was "foolhardy" for Moser to rely on the ICA since the contract was terminable at will. See Lord & Lady's Enter., Inc. v. John Paul Mitchell Sys., 46 Mass. App. Ct. 262, 270 (1999) (no right to recover reliance damages based on term of contract where agreement is terminable at will). Foolhardiness is a question of fact not resolvable on a motion to dismiss.

### IV. ORDER

Defendant's Motion to Dismiss (Docket No. 3) is **DENIED**.

 

                                PATTI B. SARIS
                                United States District Judge